COMMONWEALTH vs. JOSEPH J. CANTY.

Worcester. September 3, 2013. - November 6, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Motor Vehicle,* Operating under the influence. *Intoxication. Evidence,* Intoxication, Opinion, Indictment, Guilty plea. *Practice, Criminal,* Witness, Indictment, Plea. *Witness,* Police officer. *Due Process of Law,* Elements of criminal offense, Notice, Plea. *Constitutional Law,* Indictment, Plea.

This court concluded that where a criminal defendant is charged with operation of a motor vehicle while under the influence of alcohol, a lay witness may offer at trial an opinion regarding the defendant's level of sobriety or intoxication but may not opine whether the defendant operated a motor vehicle while under the influence of alcohol or whether the defendant's consumption of alcohol diminished his ability to operate a motor vehicle safely [538-544]; accordingly, a Superior Court judge did not err in admitting in evidence opinion testimony of a police officer that the defendant was probably impaired, but did err in admitting in evidence opinion testimony of a police officer that the defendant's ability to drive was diminished by his consumption of alcohol; however, the error was not prejudicial, where the risk of prejudice was diminished by the judge's explicit final instruction to the jury, and where there was overwhelming evidence that the defendant's consumption of alcohol had diminished his ability to operate a motor vehicle safely [544-545].

The absence of a required element in an indictment did not by itself violate a criminal defendant's due process right to fair notice of the crime charged, where the defendant had fair notice of the crime charged and failed to show that he did not understand that he was pleading guilty to that crime. [545-550]

INDICTMENTS found and returned in the Superior Court Department on July 23, 2009.

The cases were tried before *Janet Kenton-Walker,* J., and a motion to vacate conviction was considered by her.

The Supreme Judicial Court granted an application for direct appellate review.

*James P. Vander Salm* for the defendant.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

GANTS, J. This case presents two issues. First, where a defendant is charged with operating a motor vehicle while under the influence of alcohol, may a police officer offer testimony that, in his opinion, the defendant's ability to drive was diminished by the consumption of alcohol, or that the defendant was "probably impaired" by alcohol? Second, where an indictment identifies the statute that a defendant has allegedly violated but fails to allege an essential element of proof in describing the offense, does due process require that a guilty plea to that indictment be vacated because the indictment fails to charge a crime? As to the first issue, we conclude that a police officer who observed the defendant may offer an opinion as to the defendant's level of intoxication arising from the consumption of alcohol, but may not offer an opinion as to whether the defendant's intoxication impaired his ability to operate a motor vehicle. As to the second issue, we conclude that an indictment may charge a crime without alleging all the essential elements of proof, and that due process does not require vacating the defendant's conviction arising from his guilty plea where the defendant has fair notice of the crime charged and fails to show that he did not understand that he was pleading guilty to that crime.

*Background.* At approximately 1:38 A.M. on March 8, 2009, Leicester police Officer Frank Bulman was parked on Main Street monitoring traffic when he saw a motor vehicle traveling in the westbound lane come within four inches of striking the curb. He followed the motor vehicle for approximately three-quarters of a mile and observed it cross over the white fog line on the shoulder of the road and "drift back" and cross the double yellow line at the center of the road. Officer Bulman activated the blue lights on his cruiser, but the driver did not apply the brakes until fifteen to twenty seconds later and traveled another fifteen to twenty seconds before pulling over to the side of the road. Because the vehicle's reverse lights remained on, Officer Bulman used his cruiser's public address system to instruct the driver to put the truck "in park." The reverse lights remained on, so Officer Bulman left his cruiser and approached the defendant, who was alone in the motor vehicle, again instructing him to put the truck "into park." The defendant responded that it was not his vehicle.

When Officer Bulman asked the defendant for his license and registration, the defendant had difficulty retrieving his identification from his wallet. When he handed over his identification, Officer Bulman smelled the odor of alcohol on the defendant's breath and saw that the defendant's eyes were bloodshot. In response to the officer's question, the defendant said that he had consumed four beers over four hours, approximately two hours earlier.

Officer Bulman asked the defendant to get out of the vehicle to perform some field sobriety tests. When he stepped out of the vehicle, the defendant tripped over his own feet and "almost stumbled." Officer Bulman first administered "the walk and turn test," asking the defendant to take nine steps "touching heel to toe" along an imaginary straight line counting each step out loud and then pivot and proceed back, again walking heel to toe. The defendant "walked at a complete forty-five degree angle, almost like a severe wind was blowing him to the side." The officer also asked the defendant to perform a "one-leg stand" test, instructing him to lift one leg approximately six inches off the ground while counting from one to thirty. During the course of this test, the defendant put his foot down three separate times, and raised his arms to maintain balance. After the conclusion of the second test, approximately ten minutes after he had stopped the defendant's vehicle, Officer Bulman arrested the defendant. Officer Ronald Tarentino, who arrived at the scene after the defendant had left the vehicle and who witnessed the field sobriety tests, found a half-empty bottle of brandy on the floor of the front passenger side of the defendant's vehicle in the course of an inventory search.

The defendant was charged in six indictments, but tried before a jury on only the fifth and sixth indictments: operating a motor vehicle while under the influence of alcohol, in violation of G. L. c. 90, § 24 (1) (a) (1),[1] and negligently operating a motor vehicle so as to endanger, in violation of G. L. c. 90,

[1] The indictment alleged that the defendant had at least four previous convictions of operating a motor vehicle while under the influence of alcohol, but this part of the indictment was severed and not considered by the jury. After he was convicted by the jury, the defendant pleaded guilty to that part of the indictment that alleged he was a fifth-time offender.

§ 24 (2) (*a*). After the jury's guilty verdicts, the defendant pleaded guilty to the first indictment (the indictment the defendant contends on appeal was fatally flawed), the second indictment (operating a motor vehicle with a license suspended for operating while under the influence of alcohol), and the fourth indictment (operating a motor vehicle with a suspended license after having previously been convicted of this offense), all in violation of G. L. c. 90, 23.[2],[3]

The defendant moved to vacate his conviction on the first indictment. He claimed that the indictment, which alleged operating a motor vehicle while under the influence of alcohol with a suspended license, did not allege a crime because the operation of a motor vehicle while under the influence of alcohol with a suspended license is a crime under G. L. c. 90, § 23, *only where the license was suspended for operating while under the influence*, and the indictment did not allege the basis for the license suspension. The judge denied the motion.[4] We granted the defendant's application for direct appellate review of his convictions and of the judge's denial of his motion to vacate his conviction on the first indictment.

*Discussion.* 1. *Opinion testimony regarding sobriety.* Before trial, the defendant moved in limine to exclude any opinion by any Leicester police officer as to whether the defendant "was

[2]The third indictment, which alleged that the defendant operated a motor vehicle with a suspended license, in violation of G. L. c. 90, § 23, was dismissed.

[3]The judge sentenced the defendant to two and one-half years in a house of correction for the conviction of operating a motor vehicle while under the influence of alcohol, fifth offense (fifth indictment), and a concurrent two-year term in a house of correction for the conviction of negligent operation of a motor vehicle (sixth indictment). As to the first indictment, the judge sentenced the defendant to two and one-half years in a house of correction, to commence on and after the sentence on the fifth indictment, one year to serve and the balance suspended, with a two-year term of supervised probation. As to the remaining indictments, the judge sentenced the defendant to one year in a house of correction, to be served concurrently with the sentence imposed on the first indictment.

[4]The defendant also moved to vacate his conviction on the fourth indictment (operating a motor vehicle with a suspended license after having previously been convicted of this offense), claiming that this conviction violated his right against double jeopardy because each element of this indictment is also an element of the second indictment (operating a motor vehicle with a license suspended for operating while under the influence of alcohol). The judge allowed this motion.

either intoxicated, impaired, or otherwise under the influence of alcohol," claiming that this was an ultimate issue for the jury to decide and that allowing such an opinion in evidence would "usurp the function of the jury." The judge denied the motion, stating that the case law from "time immemorial" has been that "a lay witness can give an opinion as to an individual's sobriety." The judge assured counsel that she would include in her charge to the jury an instruction that the jury must determine whether the defendant was under the influence of alcohol and that they may accept or reject any witness's opinion regarding that issue.

At trial, the prosecutor elicited the following testimony from Officer Bulman:

> THE PROSECUTOR: "And at that point [after the field sobriety tests] had you formed any opinion as to his sobriety, officer, based on your observations?"
>
> THE WITNESS: "Yes, I did."
>
> THE PROSECUTOR: "And what was that opinion?"
>
> THE WITNESS: "I believed that his ability to drive was diminished."
>
> THE PROSECUTOR: "Did you have any opinion as to what may have caused that diminished capacity?"
>
> THE WITNESS: "I believe it was alcohol consumption."

In addition, the prosecutor asked Officer Tarentino, "Did you at any point in time have any opinion as to Mr. Canty's sobriety, officer, based on what you observed?" Officer Tarentino replied, "Based on what I observed, yeah, in my opinion he was probably impaired." The defendant did not object at trial to any of these questions, but we consider the claim of error preserved where the judge, in deciding the motion in limine, noted that the defendant's objection was preserved. See *Commonwealth* v. *Kee*, 449 Mass. 550, 553 n.5 (2007).

The defendant's claim of error requires us to harmonize the tension between two well-established evidentiary rules in cases charging the crime of operating a motor vehicle while under the

influence of alcohol. On the one hand, as the judge correctly noted, we have long recognized that opinion testimony of lay witnesses as to whether a person was intoxicated from the consumption of alcohol is admissible at trial. *Edwards* v. *Worcester*, 172 Mass. 104, 105 (1898). "While it might not be easy accurately to describe each and every minute detail indicative of intoxication . . . the principal objective symptoms are so well known that witnesses have always been permitted to express their opinion as to the inebriety of a person." *Holton* v. *Boston Elevated Ry. Co.*, 303 Mass. 242, 246 (1939), and cases cited. See M.S. Brodin & M. Avery, Massachusetts Evidence § 7.2.2, at 399 (8th ed. 2007) ("Whether a person was drunk or intoxicated is also within the category of permissible summary description"); W.G. Young, J.R. Pollets, & C. Poreda, Evidence § 701.6, at 467 (2d ed. 1998) ("Since the princip[al] objective symptoms of intoxication are so well known, and a conclusion which people in general are capable of drawing, witnesses are permitted to express their opinions as to the sobriety of a person"). We also have recognized that police officers in criminal cases are permitted, as lay witnesses, to offer their opinion of an individual's sobriety. *Commonwealth* v. *Jones*, 464 Mass. 16, 17 n.1 (2012) (police officer in prosecution for operating motor vehicle while under influence of alcohol may testify to defendant's "apparent intoxication"). See *Commonwealth* v. *Sudderth*, 37 Mass. App. Ct. 317, 321 (1994), citing *Commonwealth* v. *Atencio*, 12 Mass. App. Ct. 747, 750-751 (1981).

On the other hand, as the defendant correctly notes, we have long recognized that "[n]o witness, including a police witness, may testify as to a defendant's guilt or innocence." *Commonwealth* v. *Hamilton*, 459 Mass. 422, 439 (2011). See *Commonwealth* v. *Lodge*, 431 Mass. 461, 467 (2000) ("general expression of the officer's opinion of guilt, followed by a recital of all the evidence against the defendant, is not permitted"); *Commonwealth* v. *Woods*, 419 Mass. 366, 375 (1995) (expert may not offer opinion "as to the defendant's innocence or guilt"); *Commonwealth* v. *Hesketh*, 386 Mass. 153, 161 (1982), quoting *Grismore* v. *Consolidated Prods. Co.*, 232 Iowa 328, 361 (1942) ("No witness should be permitted to give his opinion directly that a person is guilty or innocent"). The defendant

contends that, where he is charged with operating a motor vehicle while under the influence of alcohol, the officers' testimony that "his ability to drive was diminished" by the consumption of alcohol and that he was "probably impaired" are, for all practical purposes, opinions that he is guilty of the crime.

In *Commonwealth* v. *Jones*, 464 Mass. at 17 n.1, we articulated the interplay between these two evidentiary rules by stating, "In a prosecution for operating a motor vehicle while under the influence of alcohol, lay witnesses, including police officers, may not opine as to the ultimate question whether the defendant was operating while under the influence, but they may testify to his apparent intoxication." But we did not, in that case, explain how we came to that resolution. We do so here.

We begin by noting that an opinion regarding a defendant's sobriety is a lay opinion, not an expert opinion, and the reasons for admitting a lay opinion are wholly different from the reasons for admitting an expert opinion. An expert's opinion is admissible only where an expert possesses scientific, technical, or other specialized knowledge that will assist the jury in understanding a fact in issue, and where the expert has applied reliable principles and methods to the facts of the case. See *Commonwealth* v. *Barbosa*, 457 Mass. 773, 783 (2010), cert. denied, 131 S. Ct. 2441 (2011), and cases cited. See generally Mass. G. Evid. § 702 (2013). A lay opinion, in contrast, is admissible only where it is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." *Id.* at § 701, and cases cited (adopting "nearly verbatim" Fed. R. Evid. 701).[5] While an expert opinion is admissible only where it will "help jurors interpret evidence that lies outside of common experience," *Commonwealth* v. *Tanner*, 45 Mass. App.

---

[5]Because a lay opinion is admissible only where it is *not* based on scientific, technical, or other specialized knowledge, a prosecutor who elicits from a police officer his or her special training or expertise in ascertaining whether a person is intoxicated risks transforming the police officer from a lay witness to an expert witness on this issue, and the admissibility of any opinion proffered on this issue may then be subject to the different standard applied to expert witnesses. Compare Mass. G. Evid. § 702 (2013) (expert witnesses), with *id.* at § 701 (lay witnesses).

Ct. 576, 581 (1998), a lay opinion is admissible only where it lies within the realm of common experience, because a lay opinion is relevant only where, as with sobriety, "the principal objective symptoms are so well known" that we consider the lay opinion to have probative value. See *Holton* v. *Boston Elevated Ry. Co.*, 303 Mass. at 246, and cases cited; W.G. Young, J.R. Pollets, & C. Poreda, Evidence, *supra.* See also 1 McCormick on Evidence § 11, at 78 (K.S. Broun ed., 7th ed. 2013), quoting *State* v. *Brown*, 836 S.W.2d 530, 549 (Tenn. 1992) (expert opinion "results from a process of reasoning which can be mastered only by specialists in the field," while lay opinion "results from a process of reasoning familiar in everyday life"). Even where a witness has described the defendant's appearance, manner, and conduct (e.g., bloodshot eyes, slurred speech, and unsteady gait), a lay opinion by a percipient witness regarding the defendant's intoxication is still of probative value because such an opinion, especially as to the *level* of intoxication, may be shaped by observations too numerous or subtle to mention. See *Holton* v. *Boston Elevated Ry. Co.*, 303 Mass. at 246 ("it might not be easy accurately to describe each and every minute detail indicative of intoxication"); M.S. Brodin & M. Avery, Massachusetts Evidence, *supra* at § 7.2.2, at 397 ("Facts from which the jury [are] to draw an inference often cannot be described in testimony as precisely as they appeared to the witness . . . because the witness's perception was a 'composite' one — such as the perception of speed — that registered in the mind only in the form of a conclusion"); McCormick on Evidence, *supra* at § 11, at 70 (describing opinion on intoxication as "short-hand rendition" of observed facts).

In contrast, a lay witness's opinion as to whether "the defendant's consumption of alcohol diminished the defendant's *ability* to operate a motor vehicle safely" (emphasis in original) — which is the test of whether the defendant was "under the influence" of alcohol while operating a motor vehicle, in violation of G. L. c. 90, § 24, see *Commonwealth* v. *Connolly*, 394 Mass. 169, 173 (1985) — comes close to an opinion as to whether the defendant is guilty.[6] The danger posed by a witness, especially a police officer witness, offering an opinion regarding a defend-

---

[6]The judge's instruction to the jury regarding the elements that must be

ant's guilt is "that the jury might forego independent analysis of the facts and bow too readily to the opinion of an expert or otherwise influential witness." *Commonwealth* v. *LaCorte*, 373 Mass. 700, 705 (1977), quoting McCormick on Evidence, *supra* at § 12, at 27. See *Commonwealth* v. *Hesketh*, 386 Mass. at 162, quoting McCormick on Evidence, *supra* at § 12, at 26-27 (to admit in evidence witness's belief as to how case should be decided "would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses" and denigrates role of jury). See also *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. at 581 (opinion whether defendant committed particular offense "serves no educative function" and "amounts to little more than vouching for the Commonwealth's position").

Provided that a witness does not directly offer an opinion regarding the defendant's guilt or innocence in a criminal case, see *Commonwealth* v. *Hamilton*, 459 Mass. at 439, we have no rule in Massachusetts prohibiting an opinion that touches on an ultimate issue. *Commonwealth* v. *MacDonald*, 459 Mass. 148, 163 (2011), citing *Commonwealth* v. *Dancy*, 75 Mass. App. Ct. 175, 183 (2009) ("opinion testimony may touch on an ultimate issue in the case if that testimony aids the jury in reaching a decision"). See Mass. G. Evid., *supra* at § 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact"). But where an opinion comes close to an

proven to convict a defendant under G. L. c. 90, § 24, which was similar to Instruction 5.31 of the Model Jury Instructions for Use in the District Court (2013), was as follows: "In order to prove the defendant guilty of this offense, the Commonwealth must prove three things beyond a reasonable doubt: First, that the defendant operated a motor vehicle; Second, that the defendant did so on a public way; Three, that while the defendant was operating a motor vehicle, he was under the influence of intoxicating liquor. . . . Now, what does it mean to be under the influence of alcohol? Someone does not have to be drunk to be under the influence of alcohol. A person is under the influence of alcohol if he has consumed enough alcohol to reduce his ability to operate a motor vehicle safely so that alcohol has decreased his alertness, judgment, and ability to respond wrongly [*sic*]. It means that a person has consumed enough alcohol to reduce his mental clarity, self-control, and reflexes, and thereby left him with a reduced ability to drive safely. To show that a person was under the influence of alcohol, the Commonwealth is not required to show the defendant actually drove in an unsafe or erratic manner, but is required to prove that his ability to drive safely was diminished by alcohol. The amount of alcohol necessary to do this may vary from person to person."

opinion on the ultimate issue of guilt or innocence, the probative value of the opinion must be weighed against the danger of unfair prejudice. See McCormick on Evidence, *supra* at § 11, at 76 ("even if an inference passes muster under Rule 701 [of the Federal Rules of Evidence], Rule 403 permits exclusion of an inference that is prejudicial, confusing, misleading, or time-wasting"). See generally Mass. G. Evid., *supra* at § 403, and cases cited. The balance we reach is that a lay witness in a case charging operation of a motor vehicle while under the influence of alcohol may offer his opinion regarding a defendant's level of sobriety or intoxication but may not opine whether a defendant operated a motor vehicle while under the influence of alcohol or whether the defendant's consumption of alcohol diminished his ability to operate a motor vehicle safely. See *Commonwealth v. Jones*, 464 Mass. at 17 n.1.

Applying this balance to the opinion testimony offered in this case, we conclude that the judge erred in admitting Officer Bulman's opinion that the defendant's "ability to drive was diminished" by his consumption of alcohol. We also conclude that the judge did not err in admitting Officer Tarentino's opinion that the defendant was "probably impaired." We do not agree with the defendant that this opinion would reasonably have been understood by the jury to refer to impairment of the defendant's ability to drive where the opinion was proffered in response to a question asking whether the officer had an opinion "as to [the defendant's] sobriety." Nor are we inclined to suggest that a witness offering an opinion regarding sobriety is limited to the use of particular words. See *Commonwealth v. Tanner*, 45 Mass. App. Ct. at 581 ("In assessing whether expert evidence strays over the line . . . the sole touchstone should not be whether a witness uses any particular figure of speech"). "The rule that witnesses in describing conduct should tell what they saw and heard does not foreclose the use of words of summary description." *Kane v. Fields Corner Grille, Inc.*, 341 Mass. 640, 647 (1961), and cases cited. "[P]robably impaired," while not a particularly precise phrase, is no worse than many of the alternatives (e.g., "buzzed," "tipsy") to describe a modest level of inebriation.

Because we deem the claim of error preserved, we must

determine whether the admission in evidence of Officer Bulman's improper opinion constituted prejudicial error. "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,' then it is prejudicial." *Commonwealth* v. *Cruz*, 445 Mass. 589, 591 (2005), quoting *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). We conclude that the error was not prejudicial. We note first that the risk of prejudice arising from the admission of an opinion that closely touches on the ultimate issue of guilt is less with lay opinion than with expert opinion, even where the lay opinion is offered by a police officer, because it is less likely that a jury would "forego independent analysis of the facts and bow too readily to the opinion" where it is not reached through the specialized knowledge of an expert. See *Commonwealth* v. *LaCorte*, 373 Mass. at 705. Any such risk was diminished by the judge's explicit final instruction to the jury that they ultimately must determine whether the defendant was under the influence of alcohol, and that they may consider any opinion they heard about the defendant's sobriety "and accept it or reject it." See M.S. Brodin & M. Avery, Massachusetts Evidence, *supra* at § 7.2.2, at 402-403, citing *Commonwealth* v. *Henderson*, 434 Mass. 155, 160 n.9 (2001) ("where opinion testimony on the ultimate issue is permitted, the trial judge should instruct the jury that the witness's interpretation is not dispositive of the matter"). Moreover, there was overwhelming evidence that the defendant's consumption of alcohol diminished his ability to operate a motor vehicle safely: the officers' observations of the defendant's erratic driving, his bloodshot eyes, the odor of alcohol, his apparent inability to put his vehicle in "park," his poor performance on the field sobriety test, his admission that he had been drinking alcohol, and the discovery of a half-empty bottle of liquor in his vehicle. Based on the compelling evidence properly admitted, and the judge's limiting instructions, we conclude, with fair assurance, that the jury's judgment was not substantially swayed by the error.

2. *Guilty plea to a flawed indictment.* General Laws c. 90,

§ 23, sets forth three categories of crimes relevant to this case: (1) operating a motor vehicle while under the influence of alcohol while the driver's license has been suspended or revoked because of a prior violation of operating a motor vehicle while under the influence of alcohol;[7] (2) operating a motor vehicle while the driver's license has been suspended or revoked because of a prior violation of operating a motor vehicle while under the influence of alcohol;[8] and (3) operating a motor vehicle while the driver's license has been suspended or revoked.[9] The defendant was charged with the second category of crime in indictment two and charged with the third category of crime in indictment three. The first indictment, which is titled "Operating After Suspension While OUI, [G. L. c.] § 90, 23," alleges, in relevant part: "[The defendant] did operate a motor vehicle on a . . . public way . . . and at such time of operation his license to operate had been suspended or revoked, . . . and at such time of operation was in violation of [G. L. c. 90, § 24 (1) (*a*)]." This indictment would describe the first category of crimes under § 23 but for the omission of one element — that the reason for the license suspension or revocation was a violation of G. L. c. 90, § 24 (1) (*a*).

The defendant pleaded guilty to the indictment and then unsuccessfully moved to vacate his plea, claiming that the indictment did not charge a crime. On appeal, he contends that his conviction on this count violates his due process rights under art. 12 of the Massachusetts Declaration of Rights, which provides that "[n]o subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him." He also contends that he did not waive this

---

[7]"Whoever operates a motor vehicle in violation of [G. L. c. 90, § 24 (1) (*a*),] . . . while his license . . . has been suspended or revoked . . . pursuant to [G. L. c. 90, § 24 (1) (*a*),] [is guilty of a crime]." G. L. c. 90, § 23, fourth par. General Laws c. 90, § 24 (1) (*a*) (1), provides in relevant part: "Whoever, upon any way . . . operates a motor vehicle . . . while under the influence of intoxicating liquor [is guilty of a crime]."

[8]"Any person convicted of operating a motor vehicle after his license to operate has been suspended or revoked pursuant to [G. L. c. 90, § 24 (1) (*a*),] . . . [is guilty of a crime]." G. L. c. 90, § 23, third par.

[9]"Any person convicted of operating a motor vehicle after his license to operate has been suspended or revoked [is guilty of a crime]." G. L. c. 90, § 23, first par.

claim by pleading guilty because courts do not have subject matter jurisdiction to sentence defendants for conduct that is not a crime, and such a claim may not be waived. *Commonwealth v. Palladino*, 358 Mass. 28, 31 (1970) ("No court has jurisdiction to sentence a defendant for that which is not a crime").

Due process under art. 12 requires that an indictment provide a defendant with fair notice of the crime with which he is charged. *Commonwealth v. Dixon*, 458 Mass. 446, 456 (2010) ("fair notice of the charges is a touchstone" of due process under art. 12). Under Mass. R. Crim. P. 4 (a), 378 Mass. 849 (1979), an indictment need only "contain a caption as provided by law, together with a plain, concise description of the act which constitutes the crime or an appropriate legal term descriptive thereof." "A complaint or indictment will not be dismissed . . . 'if the offense is charged with sufficient clarity to show a violation of law and to permit the defendant to know the nature of the accusation against him.' " *Commonwealth v. Fernandes*, 430 Mass. 517, 519-520 (1999), cert. denied sub nom. *Martinez v. Massachusetts*, 530 U.S. 1281 (2000), quoting *Commonwealth v. Green*, 399 Mass. 565, 566 (1987). G. L. c. 277, § 34 ("An indictment shall not be dismissed or be considered defective or insufficient if it is sufficient to enable the defendant to understand the charge and to prepare his defense; nor shall it be considered defective or insufficient for lack of any description of information which might be obtained by requiring a bill of particulars").

Provided there is fair notice of the crime charged, "[i]t is not necessary for the Commonwealth to set forth in the complaint or indictment every element of the crime to withstand a motion to dismiss." *Commonwealth v. Fernandes*, 430 Mass. at 519-520, quoting *Commonwealth v. Green*, 399 Mass. at 566. Therefore, even when lack of consent needed to be proved to convict a person of the crime of indecent assault and battery of a person under fourteen years of age (which it no longer is), we declined to dismiss a complaint that failed to allege this required element. *Commonwealth v. Green, supra* at 566-567. See *Commonwealth v. Bacon*, 374 Mass. 358, 359-360 (1978) (element of knowing possession need not be alleged in indictment charging illegal possession of firearm). Indeed, the various statutory forms of

indictment in G. L. c. 277, § 79, do not set forth all of the required elements for many crimes, such as larceny, but these forms "contain sufficient descriptions of the crimes listed therein." *Commonwealth* v. *Green, supra* at 567, citing *Commonwealth* v. *Baker*, 368 Mass. 58, 77 (1975).

Therefore, the absence of a required element in an indictment does not by itself establish that a crime is not charged, even if acquittal is required if the prosecution were to prove only the allegations in the indictment. Here, where the caption identified the criminal statute that was violated, and where other indictments more clearly charged the second and third category of crimes in violation of § 23, it reasonably could be inferred that the first indictment charged a violation of the first category of crimes under § 23, that is, a violation of the fourth paragraph of § 23, and therefore provided fair notice of the crime charged. If the defendant was uncertain that this was the category of crime charged, he could have moved before pleading guilty for a bill of particulars under Mass. R. Crim. P. 13 (b) (1), as appearing in 442 Mass. 1516 (2004), or moved to dismiss the indictment under G. L. c. 277, § 47A. He did neither. Instead, he pleaded guilty to the indictment.

Generally, after a plea of guilty, a defendant's challenge would be limited to his claim that the indictment failed to charge an offense, and that the judge therefore lacked jurisdiction to accept the guilty plea. See G. L. c. 277, § 47A (unless good cause is shown, "any defense or objection based upon defects . . . in the complaint or indictment, other than a failure to show jurisdiction in the court or to charge an offense, shall only be raised [by motion] prior to trial"). That claim fails here, where the first indictment charged the offense of a violation of § 23, fourth par., even though it omitted one of the elements of that offense.

But because § 23 is so convoluted a criminal statute, we consider here whether the defendant has shown that, because of the omitted element in the first indictment, he did not know he was pleading guilty to a violation of the fourth paragraph of § 23. The defendant has failed to make such a showing. Neither the defendant nor his attorney filed an affidavit in support of the defendant's motion to vacate his conviction on the first

indictment. Moreover, on the form entitled "Recommenda-tion(s) Upon Defendant's Change of Plea," which was signed by both the defendant and his attorney, the defendant described the first indictment as "OUI while OAS for OUI," which reflects his understanding that this indictment required proof that the suspension arose from a prior violation of operating while under the influence.

The defendant's sentence recommendation also demonstrates that he knew that the first indictment charged a violation of the fourth paragraph of § 23. Of the three categories of crimes set forth in § 23, only violations of the fourth paragraph of § 23 were punishable by "imprisonment in a house of correction for a mandatory period of not less than 1 year and not more than 2 ½ years, with said sentence to be served consecutively to and not concurrent with any other sentence or penalty." G. L. c. 90, § 23, fourth par. The defendant's sentence recommendation regarding the first indictment was one year in a house of correc-tion, *on and after* his sentence for operating while under the influence, fifth conviction. The defendant's recommendation of an "on and after" sentence of one year reflects his understand-ing that this indictment alleged a violation of paragraph four of § 23, because this was the minimum jail term permissible under paragraph four.

We recognize that this question is closer than it need be. A defendant's knowledge of the crime charged should be apparent from the plea colloquy, but it is not so here. The prosecutor er-roneously characterized the first indictment as "an allegation of being under the influence of alcohol while operating after suspen-sion," omitting from his description that the suspension arose from a prior violation of § 24. This mistaken shorthand descrip-tion was repeated at times by the judge during the colloquy and by the clerk at the time of plea. But it is clear from the plea col-loquy that the defendant admitted to the missing element of the first indictment by admitting to the prosecutor's statement of facts, where the prosecutor declared that the defendant's license had been suspended in 2005 for ten years and that the defend-ant's fourth conviction of operating while under the influence was in 2005. And the defendant, at this same colloquy, pleaded guilty to the second indictment, which specifically alleged that

the defendant's license was suspended for a prior violation of § 24.[10]

In conclusion, we agree with the judge that the first indictment charged a violation of the fourth paragraph of § 23, and conclude that the defendant has failed to show that he did not know this when he pleaded guilty. Under these circumstances, we conclude that the defendant's due process right to fair notice of the crime charged was not violated by the absence of a required element in that indictment.

*Judgments affirmed.*

---

[10]The second indictment is captioned "Operating After OUI Suspension" and makes reference to G. L. c. 90, § 23. The indictment charges that the defendant "did operate a motor vehicle on a way, . . . and at such time his license has been suspended or revoked pursuant to provisions of a qualifying section of [G. L. c.] 90, § 24." Early in the plea colloquy, the judge asked the prosecutor what the difference was between the second indictment, which the judge characterized as alleging "operating after OUI suspension," and the first indictment. The prosecutor replied that the difference was that the first indictment alleges the additional element that the defendant was under the influence of alcohol at the time of operation of the motor vehicle.